# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SANDRA GALLEGOS,

       Plaintiff,

v.                                      No. 98cv0184 LH/JHG

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

       This matter comes before the Court upon Plaintiff's (Gallegos's) Motion to Reverse or Remand Administrative Decision, filed October 28, 1998. Gallegos, now age 20, has a protective filing date of June 9, 1982. Her initial application was filed by her mother before Gallegos reached the age of majority. The Commissioner denied Gallegos's application for supplemental security income. Gallegos alleges disability since June 25, 1978, the date of her birth, due to a repaired cleft palate and communications disorder.

       The Commissioner denied Gallegos's application both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge (ALJ) found Gallegos was not a disabled child within the meaning of the Social Security Act. The Appeals Council denied Gallegos's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Gallegos seeks review of the Commissioner's final decision pursuant to 42 U.S.C. §405(g).

       The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards.

*Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). This Court may not re-weigh the evidence or substitute its judgment for that of the ALJ *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).

The law in effect at the time the ALJ issued his decision required the decision maker to apply a four step analysis. *See* 42 U.S.C. § 1382c(a)(3)(A), as implemented by 20 C.F.R. § 416.924(b). Accordingly, in this case, the ALJ first inquired whether Gallegos was engaged in substantial gainful activity. 20 C.F.R. § 416.924(c). The ALJ determined she had not, so the analysis proceeded to the second step. At the second step, the ALJ asked whether she suffered from a severe impairment. 20 C.F.R. § 416.924(d). Since the ALJ found she suffered from the severe impairments of repaired cleft palate and communication disorder, inquiry proceeded to the third step. At the third step, the ALJ inquired whether the impairments were medically or functionally equivalent to a listed impairment. 20 C.F.R. § 416.924(e). At the third step, the ALJ determined Gallegos's impairments did not meet or equal a listing.

The analysis thus proceeded to the fourth and final step. At the fourth step, the ALJ performed an individualized functional assessment to determine whether Gallegos had an impairment or combination of impairments of comparable severity to that which prevent an adult from engaging in substantial gainful activity. 20 C.F.R. § 416.924(f). The ALJ determined Gallegos's impairments would not be of comparable severity to an impairment which would disable an adult. Thus, he concluded she was not a disabled child within the meaning of the Social Security Act.

After the ALJ issued his decision, Congress enacted the Personal Responsibility and Work

Opportunity Reconciliation Act, Pub.L. No. 104-193, 110 Stat. 2105. The Act amended the applicable standard for evaluating children's disability claims, 42 U.S.C. § 1382c(a)(3)(C), to read as follows:

> An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which has lasted or can be expected to last for a continuous period of not less than 12 months.

The amended Act eliminates the fourth step of the analysis. The implementing regulations reflect this change by providing that if the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). The new version of the Act applies to all cases which have not been finally adjudicated as of the effective date of August 22, 1996. *Brown v. Callahan*, 120 F.3d 1133, 1135 (10th Cir. 1997). The instant case was not finally adjudicated as of that date. Therefore, the new law applies. In reviewing the Commissioner's decision, it is therefore necessary only to review the first three steps of the analysis. *Id.*

Gallegos contends substantial evidence does not support the ALJ's determination that her impairments were not functionally equivalent to the listings. Functional equivalence requires an extreme limitation in one area of functioning, or a marked limitation in two areas of functioning. 20 C.F.R. § 416.926a(c). An extreme limitation means no meaningful functioning in a given area, and a marked limitation is one which seriously interferes with the child's functioning. 20 C.F.R. § 416.926a(c)(3).

Gallegos argues she can be considered to have marked limitations in the communicative/cognitive function, and the concentration, persistence and pace function.

The ALJ determined Gallegos had a moderate limitation in the communicative function from age 6 to 12 and a less than moderate limitation in the cognitive and communicative function from age 12 to 16. Tr. 32. The record reveals Dr. Morgan observed Gallegos was soft spoken and had good articulation. Tr. 210-212. Dr. Morgan noted that although Gallegos had a history of a cleft palate, some hearing problems, visual problems for which she refused to wear her glasses, a skin reaction, reading disorder, and was behind in academic achievement, she had strengths in performance areas which would enable her to work at a competitive level at some job in the future. Tr. 214. Furthermore, Dr. Morgan also found that while Gallegos had emotional difficulties, she did not meet any diagnostic criteria. *Id.* Dr. Morgan concluded she had the potential to be independent and self-supporting after she finished her schooling. *Id.*

Mr. Dennis, Gallegos' high school teacher, reported concerns with underachievement and attendance, but no other significant problems. Tr. 216-219. From age 6 to 12, Gallegos underwent surgery to repair her cleft palate and began special education to improve her language skills. On January 19, 1995, her speech pathologist reported she was making progress in language and articulation. Her performance IQ was found to be 86. Gallegos maintained employment in the school cafeteria, behaved and progressed appropriately in school, and received As and Bs. Tr. 178, 186, 216,-217, 232. Substantial evidence of record supports the ALJ's finding of moderate limitation in the communicative domain from age 6 to 12, and a less than moderate limitation in the cognitive and communicative function from age 12 to 16.

Gallegos also contends the ALJ failed to adequately address her deficiencies in the area of concentration, persistence, and pace. The concentration, persistence, and pace function measures the child's age-appropriate ability or inability to attend to, and sustain concentration on, an activity or

4

task, such as playing, reading, or practicing a sport, and the ability to perform the activity or complete the task at a reasonable pace. 20 C.F.R. § 416.926a(c)(4)(vi). Gallegos' special education reports establish she had problems in this area and recommended she receive supplemental instruction to curb her inappropriate attention, daydreaming, and impulsiveness. the special education report also recommended Gallegos receive additional assistance in improving her task completion. Tr. 202-206. Dr. Morgan reported Gallegos did not put forth a good effort to complete sentences, often gave up easily, and had a low frustration tolerance. Tr. 212. The decision of the ALJ does not directly discuss Gallegos' problems in this area. Furthermore, the ALJ did not expressly consider the effects of the highly structured special education program in which Gallegos was functioning as required by the regulations. 20 C.F.R. § 416.924c(d). For these reasons, a remand is required to allow the ALJ to fully consider Gallegos' deficiency in the concentration, persistence and pace and the effects of her highly structured education program on her functioning in this area.

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. Gallegos' Motion to Reverse and Remand Administrative Decision, filed October 28, 1998, should be granted. This case should be remanded to the Commissioner in order to allow the ALJ the opportunity to fully consider Gallegos' functional equivalence to the listings in light of her deficiency in the area of concentration, persistence and pace and the effects of her highly structured education program on her functioning in this area.

_____
JOE H. GALVAN
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Within ten days after a party is served with a copy of these amended proposed findings and recommended disposition that party may, pursuant to **28 U.S.C. § 636 (b)(1)**, file written objections to such amended proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the amended proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.